FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 22, 2015

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                    Plaintiff,

        v.

JAMES TERRY HENRIKSON, a/k/a
James Henrikson, a/k/a Cole Johnson,
a/k/a James Vanderbilt; TODD DAVID
BATES; and ROBBY JOE WAHRER,

                    Defendants.

No.   2:14-CR-0124-SMJ-1

**SIXTH PRETRIAL ORDER**

        A pretrial conference occurred in the above-captioned matter on September 17, 2015 and September 22, 2015.  Assistant U.S. Attorneys Aine Ahmed and Scott Jones appeared on behalf of the U.S. Attorney's Office (USAO). On September 17, 2015, all above-listed defendants were present with their respective counsel.  On September 22, 2015, Defendant Henrikson and Bates were present with their respective counsel after Defendant Wahrer changed his plea to guilty. This Order memorializes and supplements the Court's oral rulings and disposes of those motions for which the Court did not require oral argument.

# I.    PRETRIAL MOTIONS

**A.    Henrikson's Motion to Suppress Evidence Seized, ECF No. 265**

Defendant Henrikson moves the Court for an order suppressing all evidence seized from his home on January 14, 2014.  ECF No. 265 at 1–2.

1.    Particularity

Henrikson argues that the warrant lacked sufficient particularity because it did not contain any limits or guidelines as to what searches were permissible. Henrikson points to the fact that the warrant authorized officers to search his residence and all "vehicles, trailers, recreational vehicles, and/or outbuildings" located on the property as evidence of its breadth.

While a search warrant must describe items to be seized with particularity sufficient to prevent "a general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (plurality), it need only be "reasonably specific, rather than elaborately detailed," *United States v. Brock,* 667 F.2d 1311, 1322 (9th Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983).  The specificity required "varies depending on the circumstances of the case and the type of items involved," *United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir.1986).

The warrant was sufficiently specific.  The affidavit contains an exhaustive description of Henrikson and Creveling's alleged scheme to defraud investors, the

names of those suspected to be involved, and the names of the businesses through which the fraud was accomplished. The affiant attached a list of 13 categories of things to be seized: (1) computer accessories, (2) electronic storage devices, (3) computer software, (4) computer files containing passwords or other login information, (5) correspondence and business records pertaining to the operation of the businesses suspected to be engaged in fraud that are managed by Henrikson and Creveling, (6) records of employees, officers, agents, or independent contractors of Henrikson and Creveling's businesses; (7) records showing entities that did business with any of Henrikson and Creveling's businesses; (8) cellular phones and other mobile data storage devices containing information related to the operation of Henrikson and Creveling's businesses; (9) cellular phones and other mobile data storage devices containing information related to Henrikson or Creveling's schedule or travel from February 2011 on; (10) items establishing ownership of the residence, vehicles, storage facilities, phones, or computers; (11) any U.S. currency exceeding $1,000; (12) firearms and ammunition; and (13) items that show dominion and control over the property searched, like bills or contracts. It is not a stretch to believe that these categories of things would either be or contain evidence of the crimes Henrikson and Creveling allegedly committed.

The Court is not persuaded by Henrikson's argument that the government could have described the items to be seized more specifically. Where possible, the warrant limited the documents to be seized to those containing some reference to Henrikson and his aliases, Creveling and her aliases, and businesses known to be run by or associated with the couple. *See* ECF No. 265-3 at 80–81. The fact that the warrant was not limited to Henrikson's business address is irrelevant. The government had reason to believe evidence of the charged crimes would be found at other locations.

2.   Probable cause

Henrikson argues that the search of his residence was not supported by probable cause because the affidavit relied on "stale facts" from years earlier. ECF No. 265 at 14. Henrikson is mistaken.

The affidavit establishes probable cause using facts that were not stale. One week before the affidavit was signed, on January 7, 2014, law enforcement officers went to the Henrikson and Creveling residence to interview them. While inside, law enforcement officers saw 3 laptop computers, a laptop or tablet and a significant amount of paperwork that appeared to be invoices and other billing documents. "The paperwork had multiple colored copies attached and were separated into different piles with different invoices." ECF No. 265-1 at 36. The

fact that Henrikson and Creveling had a number of business addresses is irrelevant.

There was probable cause to believe that the couple's business records would be found at their residence.  The fact that some of the facts in the affidavit were not recent facts is irrelevant.

Defendant Henrikson's Motion to Suppress, ECF No. 265, is denied.

**B.     Henrikson's Motion to Suppress All Records, Documents, Testimony, Papers, Analysis, and Any Other Matter Pertaining to Phone Number 425-988-4940, ECF. No. 321**

Defendant Henrikson moves the Court for an order suppressing all records relating to phone number 425-988-4940 on the ground that the warrant was not supported by probable cause and was illegal under North Dakota state law.   In his reply in support of his motion, Defendant Henrikson adds that the North Dakota state court lacked jurisdiction to issue a warrant to an out-of-state cell phone service provider.  ECF No. 380 at 10–19.

It is well settled that evidence obtained by federal officials acting in concert with state officials in violation of state law but in compliance with federal law is admissible in federal court.  *U.S. v. Chavez-Vernaza,* 844 F.2d 1368, 1372 (9th Cir. 1987).  Thus, even if Henrikson is correct and the phone records at issue were

1    obtained in violation of state law—a possibility about which the Court expresses

2    no opinion—it would be irrelevant.

3        The question, then, is whether the phone records were seized in compliance

4    with federal law.  Reviewing courts give great deference to a magistrate's finding

5    that a particular affidavit establishes probable cause.  *U.S. v. Leon,* 468 U.S. 897,

6    914 (1984).

7        The affidavit submitted sought Defendant Henrikson's phone records in

8    connection with the disappearance of K.C. Clarke.  The affidavit states that K.C.

9    Clarke worked for Defendant Henrikson, that Defendant Henrikson and his wife

10   were the last to see Clarke alive, and that Creveling fraudulently used a credit card

11   belonging to Clarke on at least two occasions.  ECF No. 321 at 4–5.  The affiant

12   sought to compare Henrikson's cell phone usage with Clarke's around the time

13   that Clarke disappeared.  This affidavit easily establishes probable cause.

14        Henrikson also argues that the North Dakota state court lacked

15   "jurisdiction" to issue the warrant for phone records from an out-of-state phone

16   carrier.  ECF No. 380 at 11–19.  In support, Henrikson cites sections of North

17   Dakota code defining a trial court's subject matter jurisdiction.  ECF No. 380 at

18   11-19 (citing N.D. CENT. CODE § 27-05-06; N.D. CENT. CODE § 27-05-22).

19   Henrikson's argument makes no sense.  Henrikson confuses subject matter

20   jurisdiction with the court's authority to act.  In North Dakota, as everywhere, a

court's subject matter jurisdiction depends on the type of controversy before it. *Alliance Pipeline L.P. v. Smith,* 833 N.W.2d 464, 471 (N.D. 2013); *Cole v. Harveyland,* 258 P.3d 70, 75-76 (Wash. App. Div. I 2011). This argument fails.

Defendant Henrikson's Motion to Suppress All Records, Documents, Testimony, Papers, Analysis, and Any Other Matter Pertaining to Phone Number 425-988-4940, ECF. No. 321, is denied.

**C.    USAO's Motion to Admit Out-of-Court Statements for Their Effects on Listener and Pursuant to Rule 807, ECF. No. 324**

The USAO moves the Court for an order admitting 7 out-of-court statements for their effect on the listener or under Federal Rule of Evidence 807.

1.    <u>Statements establishing Henrikson's motive to kill Carlile</u>

In summer of 2013, Carlile allegedly told Henrikson, and other investors in Kingdom Dynamic Enterprises (KDE), that Pamp Maiers was interested in investing. In fall of 2013, Volery Tormozov allegedly told Henrikson that Pamp Maiers would not invest in the oil deal unless Carlile was removed from the business. And in November of 2013, Pamp Maiers allegedly told Henrikson that he would not invest in any business involving Carlile.

The USAO does not want to introduce these statements for their truth. Rather, the USAO wants to introduce these statements to show that Henrikson had a motive to kill Carlile. According to the USAO, Henrikson was angry when he

found out that Carlile lied when he said that Maiers was interested in investing in KDE. Henrikson then discovered that Maiers would only be interested in KDE if Carlile were not involved. Henrikson was angry at Carlile for lying. And Henrikson wanted Maiers to save the KDE deal which he wouldn't do unless Carlile was out of the picture.

Defendant Henrikson objects only to the first statement—Carlile's statement to a room full of investors, including Henrikson, that Pamp Maiers was interested in investing. "Absent a witness who can testify that he presented this information to Mr. Henrikson, the [Defense] would object to the introduction of this information through a hearsay declarant." ECF No. 354 at 16. But because the statement is not offered for its truth, it is not hearsay. The Court admits these three statements.

2.    Statements explaining the investigation of Henrikson

In October of 2013, Carlile allegedly told Elberta that Henrikson had assaulted and threatened him. In November of 2013, Carlile allegedly told his son Shad that "if I disappear or wake up with bullets in my back, promise me you will let everyone know that James Henrikson did it."

The USAO wants to introduce these statements, and the fact that Elberta and Shad told Detective Burbridge about them, to explain why the investigation of the home invasion murder of a business man in Spokane focused on Henrikson.

ORDER - 8

The USAO is concerned that Henrikson will argue at trial that law enforcement botched the investigation of Carlile's death. The USAO wants to be able to tell the jury all the evidence that led law enforcement to Henrikson to either preempt or answer this likely argument.

Federal Rule of Evidence 403 provides that a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice is the undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013). Application of Rule 403 must be cautious and sparing because the Rule's major function is limited to excluding matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).

The Court excludes the statements by Henrikson to his wife and his son and their statements to Detective Burbridge. These statements are among the most prejudicial that the Court can think of. The USAO has plenty of other, less prejudicial evidence to explain why the investigation of Carlile's death focused on Henrikson.

ORDER - 9

1    The USAO's Motion to Admit Out-of-Court Statements, ECF No. 324, is

2    granted in part (as to the statements establishing motive) and denied in part (as to

3    all other statements).

4    **D.    USAO's Motion in Limine, ECF No. 326**

5    The USAO moves the Court for an order permitting it to call Agents Tom

6    Irvin and Eric Barker to testify about the banking transactions of Henrikson and

7    Carlisle, respectively.   The USAO stresses that Agents Irvin and Barker will

8    merely summarize the banking records submitted without offering any opinion.

9    A lay witness may testify to an opinion that is rationally based on their

10   perception, helpful to a clear understanding of their testimony or the determination

11   of a fact in issue, and not based on scientific, technical, or other specialized

12   knowledge within the scope of Rule 702.  Fed. R. Evid. 701.

13   The USAO asserts that Agents Irvin and Baker have conducted numerous

14   financial investigations as United States Postal Inspectors.   During these

15   investigations, they have, as they did in this case, examined various bank accounts

16   and summarized the transactions in spreadsheets.  The USAO asks the Court to

17   permit these agents to testify about the transactions using the spreadsheets they

18   prepared to help the jury understand their testimony.  The Court concludes that the

19   proposed testimony would be rationally based on their perception, helpful to a

20   clear understanding of the financial transactions at issue, and not based on

specialized knowledge requiring an expert. Fed. R. Evid. 701. Should either

agent veer into prohibited, expert territory during their testimony, Defendant

Henrikson is free to object at that time.

The USAO's Motion in Limine, ECF No. 326, is granted.

**E.     USAO's Amended Motion for Pretrial Admission of Exhibits, ECF No.**

**330 (original at ECF No. 327)**

The USAO moves the Court for a pretrial order admitting three exhibits to

permit the USAO to use them during its opening statement. The USAO would

like to use the 911 recording of Elberta Carlile on the night of her husband's

murder, 3 dimensional images of the Carlile residence, a schematic and photos

from Henrikson's business where K.C. Clarke was allegedly murdered, and an

unannotated map of North Dakota to illustrate the defendants' travel pattern.

Defendant Henrikson opposes only the pretrial admission of the 911 call,

citing Confrontation Clause concerns. After listening to a recording and reading

the transcript of the call, the Court concludes that the call is non-testimonial. The

caller clearly believes she is reporting an ongoing emergency. *Davis v.*

*Washington,* 547 U.S. 813 (2006). Accordingly, there is no Confrontation Clause

problem with its admission. *Whorton v. Bockting,* 549 U.S. 406 (2007).

The USAO's Amended Motion for Pretrial Admission of Exhibits, ECF No. 330, is granted. The previous version of this motion, ECF No. 327, is denied as moot.

**F.  Defendant Henrikson's Second Motion to Preclude, or Limit, the Testimony of His Former Spouse, ECF No. 357**

Defendant Henrikson moves the court to exclude 5 pieces of testimony the USAO intends to elicit from his former spouse, Sarah Creveling, on the ground that they were privileged marital communications.

The marital communications privilege provides that private communications between spouses are presumed to be confidential and are thus privileged. *Wolfle v. United States,* 291 U.S. 7, 14 (1934). This privilege covers only (1) words or acts intended as communication to the other spouse, (2) those communications made during a valid marriage, and (3) those marital communications which are confidential. *United States v. Marashi,* 913 F.2d 724, 729-30 (9th Cir. 1990). Although marital communications are presumed to be confidential, that presumption may be overcome by proof of facts showing that they were not intended to be confidential. The presence of a third party or the likelihood that a third party might overhear the communication overcomes the presumption of confidentiality. *U.S. v. Montgomery,* 384 F.3d 1050, 1056 (9th Cir. 2004).

1    1. <u>January 2014 phone conversation</u>

2        In January 2014, Spokane police officers came to Henrikson and

3    Creveling's home while they were out. Their associates Robin Benson and

4    Andrew Delao were at the home when the officers arrived. Benson and Delao

5    called Creveling. While on the phone, Creveling suggested to Henrikson that they

6    should go home. Creveling intends to testify that Henrikson said, loud enough for

7    Benson to hear, "We're not going home" and "Don't let them in the house, don't

8    talk to them."

9        The USAO argues that the marital communications privilege does not apply

10    to the statement "We're not going home" because Henrikson said it loud enough

11    for Benson, who was still on the phone, to hear. The Court agrees. The likelihood

12    that Benson could have overheard overcomes the presumption of confidentiality.

13    *See Montgomery,* 384 F.3d at 1056.

14        The USAO argues that the marital communications does not apply to the

15    statement "Don't let them in the house, don't talk to them" because Henrikson

16    was speaking to Benson. The Court agrees. Henrikson and Creveling were not at

17    home. It doesn't make sense that Henrikson would be telling Creveling—who

18    was with him, not at home—not to let the police into their home. Rather, it is

19    clear that he was speaking to Benson who was calling from the home.

20

ORDER - 13

2. <u>Phone conversation with Detective Burbridge</u>

On the night of the Carlile murder, December 15, 2013, Detective Burbridge called and spoke with Defendant Henrikson. Creveling will testify that Henrikson refused to give Detective Burbridge their address.

The USAO withdrew their request to introduce this statement at oral argument.

3. <u>Henrikson ripped the phone off the wall</u>

Creveling will testify that when she asked Henrikson if he had anything to do with the Carlisle murder, he ripped the phone off the wall.

The USAO believes this was non-communicative action, and therefore admissible. The Court agrees. The marital privilege applies only to communications. While actions can be communicative, there is no allegation that this particular action was intended to communicate any particular message.

4. <u>Henrikson told Creveling he did not recognize Suckow</u>

Creveling will testify that after seeing Defendant Suckow's photo on television she asked Henrikson if he knew Suckow and Henrikson replied "No." This is a communication between spouses so it is presumed confidential. The USAO provided no facts to overcome that presumption. It is excluded.

5. <u>Henrikson's statements on the night of the Carlisle murder</u>

On the night of the Carlisle murder, Creveling was asleep in her bedroom. Creveling intends to testify that Henrikson came into their bedroom, left the door open, and stated "Doug is dead.  Someone shot him."  Creveling will testify that she got out of bed and followed him into the living room and kitchen area adjacent to the bedroom.  Creveling will testify that, in front of several other people at their home, Henrikson said "It must have been personal, he got shot six times."  Creveling will further testify that Henrikson seemed weirdly calm.

a. *"Doug is dead.  Someone shot him."*

The USAO argues that this statement is not privileged because it was said with the bedroom door open in audio range of third parties in the living room and kitchen area.  The Court disagrees.  The fact that the door was open and that there were people in the next room is insufficient to overcome the presumption of confidentiality.

b. *"It must have been personal, he got shot six times."*

This statement was made to a group in the living room and kitchen area.  At oral argument, defense counsel argued that, where the USAO has another source for testimony, the court should not invade the marital relationship and permit the spouse to testify.  As the USAO responded, that is not the law.  The marital communications privilege either applies or it does not.  If it applies, the spouse

ORDER - 15

1    cannot testify about the communications.  If, as here, it does not apply, the USAO

2    is free to elicit testimony from the spouse even where it has other witnesses that

3    could testify to the same statements.

4        c. *Demeanor testimony*

5        The USAO argues that Creveling is permitted to testify to Henrikson's

6    demeanor since, as his spouse, she was in a unique position to evaluate it.

7    Creveling plans to testify that Henrikson seemed weirdly calm on the night of the

8    murder.

9        In support of his counter-argument, Henrikson cites *State v. Haga,* 8 Wn.

10   App. 451 (Wash. Ct. App. 1973).  In *Haga,* the Washington Court of Appeals

11   reversed two murder convictions for improper demeanor testimony.  A jury

12   convicted Eric Haga of the murders of his wife and infant daughter.  The

13   responding ambulance driver testified at trial that Haga showed no grief and that it

14   is unusual for a spouse to show no grief in his experience.  The Court of Appeals

15   determined that the driver could testify that Haga showed no grief, but that his

16   further testimony that to show no grief is unusual invaded the province of the jury.

17       Creveling's proposed testimony is not like the ambulance driver's

18   testimony in *Haga*.  Unlike the ambulance driver, Creveling has extensive

19   knowledge of Henrikson's demeanor and usual reactions.  Creveling may testify

20   about Henrikson's demeanor.

Defendant Henrikson's Second Motion to Preclude, or Limit, the Testimony of His Former Spouse, ECF No. 357, is granted in part (excluding statements 2, 4, and 5(a), and denied in part (admitting statements 1, 3, 5(b), and 5(c)).

## G.    Defendant Henrikson's Motion to Change Venue, ECF No. 373

Defendant Henrikson moves the Court for an order moving his trial to a different location within the Eastern District of Washington or, alternatively, to another district.    Henrikson argues that the continuous and in-depth media coverage of his case in the Spokane area has poisoned the jury against him.

The Sixth Amendment of the United States Constitution guarantees criminal defendants the right to trial by an impartial jury of the state and district where the crime was committed.    U.S. CONST. amend. VI. The prosecution generally occurs in a district in which the offense was committed.  Fed. R. Crim. Proc. 18.  But upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial here.  Fed. R. Crim. Proc. 21(a).  District court judges have broad discretion in ruling on changes of venue.  *United States v. Rewald,* 889 F.2d 836, 863 (9th Cir. 1989).

Courts look to four non-exclusive factors in determining whether a motion to change venue should be granted.

1.  The size and characteristics of the community from which jurors will be drawn.
2.  Whether the media coverage contains blatantly prejudicial or compromising information such as a confession.
3.  The length of time between the crime and date of trial.
4.  Whether the jury ultimately reached independent conclusions for each charged offense.

*United States v. Skilling,* 130 S.Ct. 2896, 2915-16 (2010).

Defendant Henrikson argues that the trial must be moved because of the *volume* of media coverage in the Spokane area. That is not the problem. A jury that has seen a lot of coverage of a case is not necessarily prejudiced against the defendant. The problem is that the press coverage included a number of facts and statements that have been excluded by the Court. For example, twenty-eight of the reports have included Carlisle's statement to his sons that, "if I disappear or wake up with bullets in my back, promise me you will let everyone know that James Henrikson did it." The Court would be hard pressed to think of something more prejudicial in a murder case than the victim's own statement to his son that if he dies, the defendant did it. The reports have also included the previously excluded escape attempt.

The USAO opposes moving the trial out of Spokane on the ground that the decision is premature since voir dire has not occurred. The USAO points out that the Henrikson case has also been covered in the rest of the Eastern District, including Richland and Yakima, which is true. But there has been less coverage

and the coverage has not included all the prejudicial details present in the Spokane-area coverage.

Because the Spokane media coverage has contained highly prejudicial statements and facts that the Court has already excluded, the Court orders the trial moved from Spokane to Richland. The Court reserves ruling on the motion to move the trial to another district until after voir dire is attempted.

Defendant Henrikson's Motion to Change Venue, ECF No. 373, is granted in part (as to move to Richland) and reserved in part (as to move out of district).

## H.    USAO's Motion in Limine, ECF No. 409, & Defendant Henrikson's Motion in Limine, ECF No. 416

The USAO moves the Court for an order (1) ruling on the admissibility of uncharged crimes and prior bad acts under Federal Rule of Evidence 404(b) and (2) admitting Henrikson's recent statements as party admissions. ECF No. 409.

The USAO asks that the Court admit testimony from Eric Guerrero that Henrikson offered him $100,000 to kill Creveling, Hall, and Delao on the ground that, while uncharged, this is inextricably intertwined with the charged offenses. The Court agrees. In his own motion in limine asking the Court to exclude this evidence, Defendant Henrikson argues that this testimony should be excluded under Rule 404(b). ECF No. 416. But other act evidence that is inextricably intertwined with a charged offense is independently admissible and exempt from

requirements of Rule 404(b). *United States v. Anderson,* 741 F.3d 938, 949 (9th Cir. 2013). The Guerrero testimony is admitted. Likewise, the Court concludes that Suckow's testimony that Henrikson offered him money to kill Steve Kelly is also inextricably intertwined with a charged offense.

The USAO asked that Peyton Martin be permitted to testify about her relationship with Defendant Henrikson. Martin would testify that Henrikson told her that "People are getting sick of your mom, and she could be killed." Martin's mother is Tex Hall's long-term girlfriend, Tiffany Martin. When Martin got upset, Martin will testify that Henrikson told her, "Well, things are already in motion." The USAO wants these comments to be admitted as party admissions.

> I mean, it's not hearsay upon hearsay upon hearsay. It's him making the statement to the -- to the individual. There's no hearsay involved. In fact, it's a hearsay in terms of it's an admission by him.
> So if he says, "Things are already in motion. Your mom is going to get killed," and there's relevance in terms of the mom being the spouse of Tex Hall, who a witness is going to come in and testify, "Yeah, he solicited me for $100,000 to go kill Tex Hall."

ECF No. 484 at 11. These statements are admitted as party admissions.

The USAO asks that Martin be permitted to testify that on a trip to Chicago with Henrikson, he tried a small amount of China White heroin and got sick. According to the USAO, this testimony corroborates the anticipated testimony of co-defendants Robert Delao and Todd Bates. Because the probative value of this

1    testimony is substantially outweighed by the danger of unfair prejudice, it is

2    excluded. Fed. R. Evid. 403.

3         On September 14, 2015, Henrikson and Suckow were transferred to

4    Spokane in advance of the sixth pretrial conference. Henrikson told Suckow that

5    "I hear they can't find the body." ECF No. 409 at 3. This statement was made by

6    a party and offered against that party. Accordingly, it is admitted as a party

7    admission. Fed. R. Evid. 801(d)(2)(A).

8         The USAO also wishes to introduce as evidence Defendant Henrikson's

9    statement to Homeland Security Investigations Agents Darrick Trudell and Mark

10   Buskey during his transport from North Dakota to Spokane. Henrikson asked,

11   "What will I get if I just plead guilty?" ECF No. 409 at 3. The probative value of

12   this statement to show consciousness of guilt is substantially outweighed by the

13   danger of unfair prejudice. Accordingly, it is excluded. Fed. R. Evid. 403.

14        At oral argument, the USAO asked the Court to permit Agent Trudell to

15   testify about a comment Henrikson made after being taken into custody. When

16   Agent Trudell arrested Mr. Henrikson, he directed Henrikson to take his hands out

17   of his pockets. Later, Henrikson asked: "What if I didn't take my hand out of my

18   pocket? What would you have done?" ECF No. 484 at 14. The USAO wants

19   Agent Trudell to be able to testify that he believed Henrikson considered suicide

20   by cop—refusing to take his hands out of his pockets, thus forcing the police to

shoot him—when he was arrested.  Defendant Henrikson opposes admission of this testimony on the ground that it is substantially more prejudicial than it is probative of anything.  The Court agrees and excludes this testimony.

The USAO's Motion in Limine, ECF No. 409, is denied in part (excluding Henrikson's question to HIS agents and Agent Trudell's suicide-by-cop testimony) and granted in part (admitting everything else).

Defendant Henrikson's Motion in Limine, ECF No. 416, is denied.

## I.    Defendant Henrikson's Amended Motion in Limine, ECF No. 415

Defendant Henrikson brings a Motion in Limine asking the Court for an order instructing the USAO and its witnesses to refrain from mentioning certain things in front of the jury without leave of Court.  ECF No. 415 at 1–2.  This motion is substantially the same as a previous motion filed by Defendant Henrikson, ECF No. 260.  As the Court has previously stated, "the Court expects the parties to abide by all relevant applicable rules and regulations and will not enter an order that serves only as a reminder as to their existence. Because the requests made in Defendant Henrikson's Motion in Limine…lack any specific factual basis, the Court is unwilling to grant either party relief at this time."  ECF No. 317 at 25.  The Court's position on these types of requests has not changed.

Defendant Henrikson's Amended Motion in Limine, ECF No. 415, is denied.

**J.      Defendant Henrikson's Motion for Additional Discovery from Government Expert Witness, ECF No. 452**

Defendant Henrikson seeks five categories of information supporting Agent Bank's testimony.

A) All documents and records relating to her opinions, including all correspondence, emails, notes, memos, witness statements, reports, drafts, and any other records pertaining to the Henrikson case;

B) All documents that Ms. Banks has reviewed or relied upon in reaching her opinions, including all correspondence, emails, notes, memos, witness statements, reports, and any other records;

C) All manuals, policies, or white papers relating to the work of the CAST team;

D) All training materials in Ms. Banks' possession relating to review of AT&T and Verizon records; and

E) All training materials that Ms. Banks has prepared relating to review of historical cell records.

ECF No. 452 at 2.  The USAO agrees that it must turn over all documents in category B.  But the USAO does dispute that documents in categories C, D, and E are discoverable.

A criminal defendant has a right to inspect all documents, data, or tangible items within the government's "possession, custody, or control" that are "material to preparing the defense." Fed.R.Crim.P. 16(a)(1)(E).  Evidence is "material" under Rule 16 if it is helpful to the development of a possible defense. *United States v. Olano,* 62 F.3d 1180, 1203 (9th Cir.1995).  A defendant must make a

ORDER - 23

threshold showing of materiality in order to compel discovery pursuant to Rule 16(a)(1)(E). _*United States v. Santiago,* 46 F.3d 885, 894 (9th Cir.1995). _Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense. *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir.1990).   Where a criminal defendant specifically identifies the information he seeks and explains how that information would help him formulate or strengthen an available defense or permit effective cross examination, the trial court abuses its discretion by refusing to order the government to produce it. *U.S. v. Budziak,* 697 F.3d 1105 (9th Cir. 2012); *U.S. v. Cedano-Arellano,* 332 F.3d 568 (9th Cir. 2003).

The Court is satisfied that, to the extent such materials exist relating to historical cell site location data and analysis, all identified categories of information must be turned over.   Defendant Henrikson has explained how these materials would help him effectively cross examine Agent Banks.

Defendant Henrikson's Motion for Additional Discovery from Government Expert Witness, ECF No. 452, is granted.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendant Henrikson's Motion to Suppress Evidence Seized, **ECF No. 265**, is **DENIED**.

**2.**    Defendant Henrikson's Motion to Suppress All Records, Documents, Testimony, Papers, Analysis, and Any Other Matter Pertaining to Phone Number 425-988-4940, **ECF No. 321**, is **DENIED**.

**3.**    USAO's Motion to Admit Out-of-Court Statements for their Effects on Listener and Pursuant to Rule 807, **ECF No. 324**, is **GRANTED in part** (admitting statements establishing Henrikson's motives) and **DENIED in part** (excluding statements by Carlile to his family and his family's statements to detectives).

**4.**    USAO's Motion to Conditionally Admit Evidence and Compel Reciprocal Discovery, **ECF No. 325**, is **RESET to the December 18, 2015 pretrial conference**.

**5.**    USAO's Motion in Limine, **ECF No. 326**, is **GRANTED**.

**6.**    USAO's Motion for Pretrial Admission of Exhibits, **ECF No. 327**, is **DENIED as moot**.

**7.**    USAO's Amended Motion for Pretrial Admission of Exhibits, **ECF No. 330**, is **GRANTED**.

**8.**    USAO's Motion for Pretrial Admission of Exhibits, **ECF No. 327**, is **DENIED as moot**.

**9.**    Defendant Henrikson's Second Motion to Preclude, or Limit, the Testimony of His Former Spouse, **ECF No. 357**, is **GRANTED in**

**part** (excluding statements 2, 4, and 5(a)) and **DENIED in part** (admitting statements, 1, 3, 5(b), and 5(c)).

10. Defendant Henrikson's Motion to Change Venue, **ECF No. 373**, is **GRANTED in part** (as to move to Richland) and **RESERVED in part** (as to move out of district).

11. USAO's Motion in Limine and Notification to the Court, **ECF No. 409**, is **GRANTED in part** (admitting Henrikson's solicitation of Guerrero and Suckow to murder, relationship between Henrikson and Peyton Martin, and Henrikson's statement that "they can't find the body") and **DENIED in part** (excluding fact that Henrikson got sick from heroin use, the suicide by cop allegation, and his question to HIS agents during transport).

12. Defendant Henrikson's Amended Motion in Limine, **ECF No. 415**, is **DENIED**.

13. Defendant Henrikson's Motion in Limine, **ECF No. 416**, is **DENIED**.

**14.**   Defendant Henrikson's Motion for Additional Discovery from Government Expert Witness, **ECF No. 452**, is **GRANTED**.

**IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 22nd day of December 2015.

_____
SALVADOR MENDOZA, JR.
United States District Judge